**The below described is SIGNED.**

**Dated: March 12, 2012**    _____
**WILLIAM T. THURMAN**
**U.S. Bankruptcy Chief Judge**



_____

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **In re:** <br><br> **Frank Vernon Richins and Allison Drown Richins,** <br><br> Debtors. | **Bankruptcy Number: 10-26048** <br><br> **Chapter 7** |
| **Frank Vernon Richins and Allison Drown Richins,** <br><br> Plaintiffs, <br> vs. <br><br> **Bank of America Home Loans,** <br><br> Defendant. | **Adversary Proceeding No. 10-02754** <br><br> **Judge William T. Thurman** |

**MEMORANDUM DECISION DENYING MOTION FOR JUDGMENT VOIDING SECOND TRUST DEED OF BANK OF AMERICA HOME LOANS**

The matter before the Court is the Plaintiffs' Motion for Entry of Judgment Voiding 2nd

1

Trust Deed of Bank of America Home Loans and Disallowing Such Claim as Secured but Allowing Such Claim as a General Unsecured Claim Without Priority ("Motion") filed by Frank Vernon Richins and Allison Drown Richins ("Plaintiffs"). A hearing on the Motion was conducted on February 9, 2012, in which the Court listened to argument by Paul James Toscano representing the Plaintiffs. Bank of America Home Loans ("Bank of America") did not appear at the hearing and has not otherwise opposed the Motion. The primary issue is whether the Plaintiffs, as chapter 7 debtors, can strip off a wholly unsecured second mortgage lien under 11 U.S.C. § 506(a) and (d).[1]

The Court has carefully reviewed and considered the Plaintiffs' argument and submissions and has conducted its own independent research of the relevant case law and statutory provisions. The Court issues the following Memorandum Decision, which constitutes the findings of fact and conclusions of law of the Court.

**I.     JURISDICTION AND VENUE**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (K). Venue is properly laid in this Court under 28 U.S.C. § 1408 and 1409.

**II.    FACTS AND BACKGROUND**

Frank Vernon Richins and Allison Drown Richins, the Plaintiffs in this adversary proceeding, filed a chapter 7 bankruptcy petition on May 6, 2010. On Schedules A and D, the Plaintiffs listed residential real property located at 704 East 2025 South in Bountiful, Utah

---

[1] All subsequent chapter and section references herein are contained in title 11 of the United States Code unless otherwise identified.

("Property") at a fair market value of $266,000. As indicated on Schedule D, the Property is encumbered by two mortgages, both held by held by Bank of America. The Chapter 7 Trustee filed a Report of No Distribution in the bankruptcy case and the Plaintiffs received a discharge on September 17, 2010.

On September 19, 2010, the Plaintiffs filed an adversary proceeding to void the second mortgage held by Bank of America on the Property under § 506(d). In the Amended Complaint filed in the adversary proceeding on June 28, 2011, Plaintiffs allege that the fair market value of the Property for 2010 is $237,000 as assessed by the Davis County Board of Equalization. The Amended Complaint states that Bank of America holds a first mortgage of $238,400 and a second mortgage of $108,638 on the Property.[2] No contrary evidence was presented at the hearing. Thus, because the first mortgage is in an amount greater than the fair market value of the property, the second mortgage is wholly unsecured. A default certificate was entered by the Clerk of this Court on September 9, 2011 and the Plaintiffs filed the Motion on December 21, 2011.

A hearing was set on the Motion for February 9, 2012. Notice of the hearing was properly served upon Bank of America. Bank of America did not appear at the hearing and has taken no action in opposition to the complaint and the Plaintiffs' requested relief. Although the Motion is not opposed by Bank of America, the Court has an independent duty to evaluate the relief being sought by the parties and accordingly, has done so here.[3]

---

[2] The Court notes that it accepts the Plaintiffs' allegation of the Property's fair market value and the amount owing on the first and second mortgages as true.

[3] *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) (holding that the court should "consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law") (citations omitted). *Mercantile Bank v. Canovas*, 237 B.R. 423, 427 (Bankr. D. Ill. 1998) (citing *Peerless Industries, Inc. v. Herrin*

3

**III.   DISCUSSION**

The Plaintiffs seek to strip off the wholly unsecured second mortgage on the Property under § 506(d). Section 506(a)(1) permits bifurcation of a secured creditor's claim into secured and unsecured portions.[4] The claim is secured up to the value of the collateral, while the excess over and above the value of the collateral is unsecured. Section 506(d) states that "[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void . . . ."[5] The phrase "stripping off" refers to when a lien is wholly unsecured and the indebted party is attempting to remove the lien from the property, while the phrase "stripping down" refers

---

*Illinois Café, Inc.*, 774 F.2d 1172 (8th Cir. 1985)). *See Wells Fargo Bank v. Beltran (In re Beltran)*, 182 B.R. 820, 824 (9th Cir. B.A.P. 1995); *Valley Oak Credit Union v. Villegas (In re Villegas)*, 132 B.R. 742, 746 (9th Cir. B.A.P. 1991) (holding that "[u]nder Fed. R. Bankr. P. 7055, courts have broad discretion to 'conduct such hearings . . . as it deems necessary and proper' to determine whether a default judgment should be entered").

[4]   Section 506(a)(1) reads:

(a)(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

[5]   Section 506(d) reads:

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless--
    (1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or
    (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

to when a lien is partially secured and only partially removed.[6] Here, the Plaintiffs contend that because the second mortgage on the Property is wholly unsecured, it can be stripped off the Property under § 506(d).

The presented issue, whether a chapter 7 debtor may use § 506(d) to strip off a wholly unsecured mortgage, has been the subject of great debate. The Court first examines the two Supreme Court cases central to the issue, before moving on to a discussion of the most recent case law on the subject of strip off in chapter 7 cases. Finally, the Court distinguishes the strip off of a wholly unsecured lien in the chapter 13 context.

### A. Stripping Down a Partially Secured Junior Lien in Chapter 7 and 13: *Dewsnup* and *Nobelman*

The Supreme Court dealt with whether a debtor in a chapter 7 case could strip down a partially secured lien on real property in *Dewsnup v. Timm*.[7] In *Dewsnup*, the Supreme Court analyzed the meaning of the phrase "allowed secured claim" as it applies to § 506(a) and (d) and ultimately found that "allowed secured claim" in § 506(a) does not have the same meaning as § 506(d). Thus, the Court found that the phrase "allowed secured claim" in § 506(d) did not allow avoidance of the portion of the lien that is not an "allowed secured claim" under § 506(a).[8]

The Court explained that "given the ambiguity in the text, [the Court] was not convinced that Congress intended to depart from the pre-Code rule that liens pass through bankruptcy

---

[6] *See Griffey v. U.S. Bank (In re Griffey)*, 335 B.R. 166, 168 n.1 (10th Cir. B.A.P. 2005); *Lam v. Investors Thrift (In re Lam)*, 211 B.R. 36, 37 n.2 (9th Cir. B.A.P. 1997).

[7] 502 U.S. 410 (1992).

[8] *Id.* at 416.

5

unaffected."[9] The Court provided three underlying reasons for its conclusion:

> (1) any increase in the value of the property from the date of the judicially determined valuation to the time of the foreclosure sale should accrue to the creditor; (2) the mortgagor and mortgagee bargained that a consensual lien would remain with the property until foreclosure; and (3) liens on real property survive bankruptcy unaffected.[10]

One year later, the Court dealt with the same lien avoidance issue in the context of a chapter 13 plan of reorganization. In *Nobelman v. American Savings Bank*, the Court found that a partially secured claim on a debtor's principal residence could not be stripped down to the fair market value of the residence under § 506(a) because the claim was protected from modification by § 1322(b)(2).[11] The Court reasoned that to use § 506(a) to strip down a partially secured mortgage lien in a chapter 13 case would "require a modification of the rights of the holder of the security interest" and that § 1322(b)(2) "prohibits such a modification where, as here, the lender's claim is secured only by a lien on the debtor's principal residence."[12]

In this case, the Plaintiffs cite to *Dewsnup* and *Nobelman* for their contention that they may strip off the wholly unsecured second mortgage on the Property in this chapter 7 case. This Court is sympathetic to the argument made by the Plaintiffs. While in private practice, the Court was counsel to the Dewsnups and advocated to the various courts that lien stripping should be permitted in the Dewsnup's chapter 7 case. However, the Supreme Court did not agree. The

---

[9] *Id.* at 417.

[10] *Talbert v. City Mortgage Servs. (In re Talbert)*, 344 F.3d 555, 559 (6th Cir. 2003) (citing *Dewsnup*, 502 U.S. at 417–18).

[11] 508 U.S. 324 (1993).

[12] *Id.* at 332.

Court divines no reason that the analysis underlying *Dewsnup's* decision should differ depending on whether the chapter 7 debtor is attempting to strip a partially secured or wholly unsecured lien. Morever, the Court finds *Nobelman* distinguishable, as it is a chapter 13 case that dealt with a code section, § 1322, that is inapplicable in this chapter 7 case.

### B.    Strip Offs in Chapter 7

While *Dewsnup* and *Nobelman* addressed the issue of whether a debtor could strip down a partially unsecured lien in a chapter 7 and 13 case, respectively, the question at issue now is whether a debtor in a chapter 7 case can strip off a wholly unsecured lien. Although the Tenth Circuit Court of Appeals ("Tenth Circuit") has not ruled on this issue directly, other circuits have considered this issue. The majority view is that a debtor may not strip off a wholly unsecured lien in a chapter 7 case under § 506(d).[13]

The Fourth and Sixth Circuits have both ruled that a debtor may not strip off a wholly unsecured lien in a chapter 7 case under § 506(d) because it is prohibited by *Dewsnup*. The Fourth Circuit found that the Supreme Court's analysis in *Dewsnup* applied both to strip downs

---

[13]  The majority of cases hold that a chapter 7 debtor may not strip off a wholly unsecured junior lien under § 506(d). *Cook v. IndyMac Bank (In re Cook)*, 449 B.R. 664 (D. N.J. 2011); *In re Talbert*, 344 F.3d 555 (6th Cir. 2003); *Webster v. Key Bank (In re Webster)*, 287 B.R. 703 (Bankr. N.D. Ohio 2002); *Bessette v. Bank One (In re Bessette)*, 269 B.R. 644 (Bankr. E.D. Mich. 2001); *In re Davenport*, 266 B.R. 787 (Bankr. W.D. Ky. 2001); *In re Fitzmaurice*, 248 B.R. 356 (Bankr. W.D. Mo. 2000); *Ryan v. Homecomings Fin. Network (In re Ryan)*, 253 F.3d 778 (4th Cir. 2001); *Cater v. Am. General Fin. (In re Cater)*, 240 B.R. 420 (M.D. Ala. 1999); *In re Virello*, 236 B.R. 199 (Bankr. D. S.C. 1999); *Swiatek v. Pagliaro (In re Swiatek)*, 231 B.R. 26 (Bankr. D. Del. 1999); *Laskin v. First National Bank of Keystone (In re Laskin)*, 222 B.R. 872 (9th Cir. B.A.P. 1998). While there are cases adopting the minority view, many of them have been overruled or questioned. *Farha v. First Am. Title Ins. (In re Farha)*, 246 B.R. 547 (Bankr. E.D. Mich. 2000), *overruled by In re Talbert*, 344 F. 3d 555 (6th Cir. 2003); *Zempel v. Household Fin. Corp. (In re Zempel)*, 244 B.R. 625 (Bankr. W.D. Ky. 1999), *overruled by In re Talbert*, 344 F. 3d 555 (6th Cir. 2003); *In re Yi*, 219 B.R. 394 (E.D. Va. 1998), *overruled by In re Ryan*, 253 F.3d 778 (4th Cir. 2001).

and strip offs of an unsecured junior lien in a chapter 7 case.[14] In support of its position, the Fourth Circuit found that the purpose of § 506 is to "facilitate valuation and disposition of property in the reorganization chapters of the Code, not to confer an additional avoiding power on a Chapter 7 debtor."[15] Furthermore, the Fourth Circuit found that the Supreme Court's analysis in *Nobelman* in no way affected the strip off of a wholly unsecured junior lien in a chapter 7 case because *Nobelman* did not discuss or even make reference the application of § 506(d).[16]

Similarly, the Sixth Circuit held in *Talbert* that "to permit a 'strip off' would mark a departure from the pre-Code rule that real property liens emerge from bankruptcy unaffected."[17] The Sixth Circuit went on to explain that even though the value of the real property was insufficient to cover the secured creditor's junior lien, the claim was still secured and "that is all that is required" by the holding in *Dewsnup*.[18] Furthermore, the Fourth Circuit found that the reasons for the *Dewsnup* decision remain applicable in a chapter 7 case when the lien is partially or wholly unsecured. The Court explained that both strip downs and strip offs in a chapter 7 case provide for the risk of a "windfall" to the debtors if the property's value increases by the time of foreclosure.[19] Thus the debtors in a chapter 7 case could not use § 506(a) and (d) to strip off the

---

[14] *In re Ryan*, 253 F.3d 778 (4th Cir. 2001).

[15] *Id.* at 782 (quoting *In re Laskin*, 222 B.R. 872, 876 (9th Cir. B.A.P. 1998)).

[16] *Id.* at 782.

[17] *In re Talbert*, 344 F.3d 555, 561 (6th Cir. 2003).

[18] *Id.*

[19] *Id.*

wholly unsecured junior lien.[20]

In the case presently before this Court, the Plaintiffs cite to only one chapter 7 case in support of their argument, which was overruled by the Sixth Circuit. In the Amended Complaint, the Plaintiffs cite to *Farha v. First American Title*[21] from the Eastern District of Michigan which allowed a chapter 7 debtor to strip off a wholly unsecured junior mortgage. However, *Farha* was subsequently overruled by the Sixth Circuit's *Talbert* decision three years later.

### C. Distinguishing the Strip Off of a Wholly Unsecured Lien in Chapter 13

The Plaintiffs contend that the allowance of strip offs in chapter 13 is applicable to the allowance of strip offs in chapter 7. This Court disagrees with that analysis because of the differing impetuses for a chapter 13 versus chapter 7 case and because *Dewsnup* simply does not allow strip off of a wholly unsecured junior lien in chapter 7 case.

The Court declines to extend the holdings of chapter 13 strip off cases to a chapter 7 strip off case. It is true that in the chapter 13 arena, the majority view is that debtors in a chapter 13 case may strip off a wholly unsecured lien, conditioned upon the requirement that the debtors complete the chapter 13 plan and receive a discharge under § 1325(a)(5)(B)(i)(I).[22] In fact, this Court currently has a decision pending before the Tenth Circuit on the issue of whether a debtor

---

[20] *Id.*

[21] *In re Farha*, 246 B.R. 547 (Bankr. E.D. Mich. 2000), *overruled by In re Talbert*, 344 F. 3d 555 (6th Cir. 2003).

[22] *See, e.g.*, *In re Gerardin*, 447 B.R. 342 (Bankr. S.D. Fla. 2011); *Erdmann v. Charter One Bank (In re Erdmann)*, 446 B.R. 861 (Bankr. N.D. Ill. 2011); *In re Victorio*, 454 B.R. 759 (Bankr. S.D. Cal. 2011); *In re Fenn*, 428 B.R. 494 (Bankr. N.D. Ill. 2010); *Lindskog v. M&I Bank FSB (In re Lindskog)*, 451 B.R. 863 (Bankr. E.D. Wis. 2011); *In re Woolsey*, 438 B.R. 432 (Bankr. D. Utah 2010); *In re Mendoza*, No. 09-22395 HRT, 2010 WL 736834 (Bankr. D. Colo. Jan. 21, 2010); *In re Jarvis*, 390 B.R. 600 (Bankr. C.D. Ill. 2008).

in a chapter 13 case may strip off a wholly unsecured lien and if so, whether the debtor must first complete the plan and receive a discharge.[23] In the *Woolsey* case, this Court held, and the United States District Court for the District of Utah affirmed, that a chapter 13 debtor may strip off a wholly unsecured second mortgage on the debtor's principal residence only after completion of a chapter 13 plan and receipt of a discharge.[24] Other courts have held that a lien may be stripped off in a chapter 13 case after the completion of the plan but that discharge is not required.[25] Ultimately, the differing treatment of wholly unsecured mortgages on debtors' principal residences may need to be resolved by the circuits or possibly the Supreme Court. However, the case before the Court at this juncture is a chapter 7 and not a chapter 13 case.

In addition to the chapter 13 cases cited by the Plaintiffs, at oral argument the Plaintiffs argued that the recent *Carroll v. Key Bank*[26] decision from the United States District Court for the District of Utah compels this Court to strip the wholly unsecured junior lien from the Property. Despite the fact that *Carroll* is a chapter 13 case, the Plaintiffs contend that *Carroll's* analysis of *Dewsnup* applies equally to the strip off of a wholly unsecured lien in a chapter 7 context.

---

[23] *In re Woolsey*, 438 B.R. 432 (Bankr. D. Utah 2010), *aff'd*, *In re Woolsey*, No. 2:10-cv-1097 (D. Utah Jan. 15, 2011), *appeal pending*, *In re Woolsey*, No. 11-4014 (10th Cir. Jan. 20, 2011).

[24] *In re Woolsey*, 438 B.R. at 438–39.

[25] *See, e.g.*, *Fisette v. Keller (In re Fisette)*, 455 B.R. 177 (8th Cir. B.A.P. 2011); *In re Okosisi*, 451 B.R. 90, 93–102 (Bankr. D. Nev. 2011) (holding that a wholly unsecured junior mortgage lien on chapter 13 debtor's principal residence could be stripped off despite the fact that the debtors were not eligible for discharge).

[26] *Carroll v. Key Bank*, No. 2:10-cv-01055-CW, 2011 WL 6338912 (D. Utah Dec. 19, 2011).

In its discussion of *Nobelman* and *Dewsnup,* the District Court in *Carroll* held that a debtor could strip off a wholly unsecured junior mortgage lien in a chapter 13 case:

> § 506(d) provides that "to the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void." 11 U.S.C. § 506(d). By its terms, § 506(d) does not void a lien if it is an "allowed secured claim." *Id.* If a lien remains even partially secured, it cannot be avoided under this provision. In contrast, if a claim is wholly unsecured, then there is, by definition, no allowed secured claim, and § 506(d) declares that such liens are void.
> In reaching its holding that § 506(d) does not void the Key Bank loan, the Bankruptcy Court relied upon the holdings of *Dewsnup v. Timm*, 502 U.S. 410 (1992) and *Nobelman v. American Savings Bank*, 508 U.S. 324 (1993). The court, however, did not differentiate between the strip down of partially secured claims, prohibited by *Dewsnup* and *Nobelman*, and the strip off of a wholly unsecured loan.[27]

Through this language, the Plaintiff contends that the District Court in *Carroll* distinguishes between strip offs and strip downs in chapter 7 cases in addition to chapter 13 cases. Thus, the Plaintiff asserts that because *Dewsnup* applied only to strip downs, it does not limit the Plaintiffs ability to strip off a wholly unsecured lien.

This Court does not view that the *Carroll* case intended to tackle the issue of lien strip offs in a chapter 7 context through its analysis of *Dewsnup* and *Nobelman*. There are several places in the *Carroll* decision that are indicative of its intent to limit its holding to chapter 13 cases. Most importantly, the section heading preceding the District Court's analysis is entitled "A Debtor May 'Strip Off' a Wholly Unsecured Loan Under § 506(d) *in the Chapter 13 Context*".[28] The language of this heading in the District Court's analysis demonstrates that it was ruling in the context of a chapter 13, and not a chapter 7 case.

---

[27] *Id.* at *2.

[28] *Id.* at *1 (emphasis added).

11

The District Court in *Carroll* goes on to explain that while some circuit courts have held that *Dewsnup* prohibits the strip off of a lien in chapter 7, such stripping off is generally permitted in chapter 13.[29] This Court interprets the District Court's discussion of the difference in strip offs between chapter 7 and chapter 13 cases as indicative of its intention to limit its holding to strip offs in the chapter 13 context. The *Carroll* decision cannot be read to imply that such strip offs are permitted in chapter 13 as well as chapter 7 bankruptcies.

In support of the Motion, the Plaintiffs cite to a variety of chapter 13 cases that permitted the strip off of junior liens, including *Tanner v. First Plus Finance*,[30] *McDonald v. Master Financial, Inc.*,[31] and *Bartee v. Tara Colony Homeowners Association*.[32] The Court finds the Plaintiffs' reliance on chapter 13 cases unpersuasive. Although this Court has ruled in *Woolsey* that a lien may be stripped off a debtor's personal residence under certain conditions, that was a chapter 13 and not a chapter 7 case. The Court sees a major differences between allowing lien stripping in a chapter 13 personal reorganization case and a chapter 7 liquidation case.

Permitting lien stripping in a chapter 13 case furthers the purpose and intent of chapter 13 in allowing and encouraging the repayment of creditors. In a chapter 7 case, the purpose and intent is liquidation with the aim of the debtor receiving a discharge. Furthermore, in a chapter 7

---

[29] *Id.* at *3 (finding that "[s]ome circuit courts have extended *Dewsnup* to prohibit a lien being stripped off in Chapter 7 bankruptcies . . . . Nevertheless, most circuits permit such loan stripping in the context of Chapter 13.").

[30] 217 F.3d 1357 (11th Cir. 2000).

[31] 205 F.3d 606 (3d Cir. 2000) (holding that a chapter 13 debtors' wholly unsecured second mortgage was stripped under § 506).

[32] 212 F.3d 277 (5th Cir. 2000).

case, unlike in a chapter 13 case, whether completing the plan of reorganization or receiving a discharge is required prior to lien avoidance is of no consequence. While discharge is also a goal in chapter 13, such discharge is conditioned upon performance and repayment under a court-ordered plan of reorganization. As a prerequisite for these reorganization plans, claims must be classified to ensure proper distribution and priority.[33]

The statutory scheme for avoiding wholly unsecured mortgage liens in chapter 13 does not exist in chapter 7, as § 1325 is peculiar to chapter 13. In a chapter 13 case, a court may only confirm a plan of reorganization after a review of certain actions and performance by the debtor and the plan. Among the required findings that the court must make to confirm a chapter 13 plan include whether: (1) the plan was filed in good faith; (2) the plan proposes to pay creditors as much as they would receive in a chapter 7 liquidation; (3) the debtors are committing all of their prospective disposable income for the payment of unsecured creditors; and (4) the future proposed budgeted items are reasonable and necessary.[34] In a chapter 7 case, none of these chapter 13 plan requirements are considered. Due to the differences between a chapter 13 and a chapter 7 case and the holding of the Supreme Court in *Dewsnup*, the Court finds a reasonable basis for treating lien stripping requested in a chapter 7 differently from that in a chapter 13.

---

[33] *See In re Talbert*, 344 F.3d 555, 562 n.6 (6th Cir. 2003) ("Section 506(d) is needed in reorganization proceedings to classify secured claims as allowed or disallowed in order to determine who gets paid. According to the court, however, there is no need for such a determination in a Chapter 7 proceeding because the trustee's job does not include making distributions to holders of secured claims; a trustee's job in a Chapter 7 proceeding is to distribute property of the estate . . . ."); *In re Laskin*, 222 B.R. 872, 876 (9th Cir. B.A.P. 1998) ("Section 506 was intended to facilitate valuation and disposition of property in the reorganization chapters of the Code, not to confer an additional avoiding power on a Chapter 7 debtor.").

[34] Section 1325.

13

## IV.  CONCLUSION

Based on the foregoing, the Court concludes that the Plaintiffs may not strip off the wholly unsecured second mortgage on the Property in this chapter 7 case. Neither the plain reading of § 506(a) and (d) nor the case law support this request. Accordingly, the Motion is denied. The Court will enter an order in the adversary proceeding consistent with this Memorandum Decision denying the Motion.



\_\_\_ooo0ooo\_\_\_

Service of the foregoing **MEMORANDUM DECISION DENYING MOTION FOR JUDGMENT VOIDING SECOND TRUST DEED OF BANK OF AMERICA HOME LOANS** will be effected through the Bankruptcy Noticing Center to each party listed below.

Paul James Toscano
10 Exchange Place
Suite 614
Salt Lake City, UT 84111
    *Attorney for Debtors*

Frank and Allison Richins
704 East 2025 South
Bountiful, UT 84010
    *Debtors*

Bank of America Home Loans
c/o Pite Duncan, LLP
4375 Jutland Drive
Suite 200
PO Box 17933
San Diego, CA 92177

Bank of America Home Loans
Attn: Barbara J. DeSoer, President
100 North Tyron Street
Charlotte, NC 28255